IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 16–cv–01931–KMT

EMAN ALI,

    Plaintiff,

v.

CAPTAIN ALIRE,
LIEUTENANT TEL,
SERGEANT COPELAND,
SERGEANT GOODLOWE,
UNNAMED JANE/JOHN DOE,
UNNAMED JANE/JOHN DOE,
OFFICER CORDOVA, and
UNNAMED JANE/JOHN DOES,

    Defendants.

---

**ORDER**

---

This case comes before the court on "Defendants' Motion to Dismiss" (Doc. No. 19 [Mot.], filed November 21, 2016). Plaintiff did not file a response.

**STATEMENT OF THE CASE**

Plaintiff, proceeding *pro se*[1], is an inmate incarcerated at the Denver Women's Correctional Facility ("DWCF") within the Colorado Department of Corrections ("CDOC"). (Doc. No. 1 [Compl.] at 2.) Plaintiff alleges from December 2015 through May 27, 2016, she

---

[1] Though this court issued an Order appointing counsel pursuant to D.C.COLO.LAttyR 15 of the U.S. District Court's Local Rules (Doc. No. 14), the Clerk has notified this court that, after four attempts, he is unable to select a member of the Civil Pro Bono Representation Panel who is available and willing to accept appointment. *See* D.C.COLO.LAttyR 15(f)(2)(E).
available and willing to accept appointment. *See* D.C.COLO.LAttyR 15(f)(2)(E).

was housed in a special needs mental health unit of DWCF known as Unit Six. (*Id.* at 4.) Plaintiff states she voluntarily chose to enroll in a Residential Treatment Program ("RTP") because she recognized she had "exhibited certain actions that required mental health intervention." (*Id.*) Plaintiff alleges sometime during March or April 2016, seven CDOC officers entered her cell "with a malicious and sadistic intent to cause harm, pain and suffering." (*Id.*) She contends she was awakened by at least five officers standing over her who yelled at her to get up over and over again. (*Id.*) Plaintiff alleges the five officers dragged her from her bed, across the room on the floor, and out into the day room area. (*Id.*) Plaintiff states she then was handcuffed with her hands behind her back while an offer attached a tether chain to the handcuffs. (*Id.*) Plaintiff alleges she was slammed against a wall and then forced onto her knees by the tether, which caused abrasions on her knees. (*Id.* at 5–11.) Plaintiff alleges a female officer then sat on her back, causing aggravation to a pre-existing difficulty with a "curve in [her] back." (*Id.* at 5.) Plaintiff states "[i]t was vaguely mentioned that [she] was 1.) Interferring [sic] with count, and 2.) Unresponsive at count time." (*Id.*) Plaintiff states she screamed at the officers that they were hurting her, but their actions continued. (*Id.*) Plaintiff states she was taken back to her cell in handcuffs, still attached to the tether. (*Id.*) Plaintiff alleges a female pulled on the tether with such force that she was severely bruised on her hands, arms, and wrists. (*Id.*) Plaintiff states she then was removed from her cell and put into an observation room for offenders on suicide watch. (*Id.*) Plaintiff alleges she was cuffed to a metal table in the observation room for hours. (*Id.*) An officer walked into the room and asked what happened to her leg, which was bleeding through her thermal pants, and then called in another officer to see

her and a nurse to bandage her leg. (*Id.*) Plaintiff alleges the next morning she was swollen and covered in bruises. (*Id.*)

Plaintiff alleges prior to this incident, she had been racially profiled and treated with extreme indifference and prejudice because she is a Muslim from Libya, Africa. (*Id.*) Plaintiff states her treatment continues to be harsh, and she has filed numerous grievances related to her treatment. (*Id.*) Plaintiff alleges her treatment on the night she alleges she was dragged out of her cell was in retaliation for her filing the grievances and to "teach [her] a lesson." (*Id.*)

Plaintiffs assert claims, pursuant to 42 U.S.C. § 1983, for excessive force, retaliation, and discrimination. (*Id.* at 7–9.) Plaintiff seeks punitive and compensatory damages. (*Id.* at 11.)

Defendants move to dismiss the claims against them for lack of jurisdiction and for failure to state a claim upon which relief can be granted. (Mot.)

**STANDARDS OF REVIEW**

*A.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] [her] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors*

of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle [her] to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.     *Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

C.   *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts

which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

A.  *Eleventh Amendment Immunity*

To the extent Plaintiff seeks monetary damages from the defendants in their official capacities, the defendants move to dismiss the claims as barred by the Eleventh Amendment. (Mot. at 4.) The Eleventh Amendment to the United States Constitution states, "The Judicial

power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). Suits against state officials in their official capacity should be treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief. *See Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007). Moreover, an action under § 1983 may only be brought against a person. Neither states nor state officers sued in their official capacity for monetary damages are persons within the meaning of § 1983. *Will*, 491 U.S. at 70–71.

Plaintiff's claims for monetary relief against the defendants in their official capacities constitute claims against the Colorado Department of Corrections. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). Therefore, Plaintiff's official-capacity claims for monetary relief against the defendant are barred by the Eleventh Amendment and should be dismissed for lack of subject matter jurisdiction.

B.  *Personal Participation*

Defendants move to dismiss Plaintiff's Eighth Amendment claim, *inter alia*, for Plaintiff's failure to allege personal participation. (*See* Mot. at 6–8.)

Evidence of a party's personal participation in an alleged constitutional violation is essential to proceeding with a § 1983 claim against that party. *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). An affirmative link must exist between the alleged constitutional violation and the defendant's participation, control, or direction. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151–52 (10th Cir. 2006). Furthermore, general, conclusory allegations, without supporting factual averments, are insufficient to state a constitutional claim against a defendant. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996). Instead, "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

### 1. *Eighth Amendment Excessive Force Claim*

At the outset, Plaintiff has alleged only that the alleged excessive force took place sometime during March or April 2016. (Compl. at 4.) This vague assertion that the alleged constitutional violation took place sometime during a two-month period is insufficient to show personal participation, as Plaintiff has not alleged specifically when the defendants committed the alleged excessive force. *Nasious*, 492 F.3d at 1163.

However, Plaintiff also fails to allege "what each defendant did to [her]." *Id.* Plaintiff alleges Defendant Alire was the shift commander on the night of the alleged excessive force and that he "addressed [her] that night." (Compl. at 2.) Plaintiff alleges Defendant Tel "would have been the officer who gave the official order to initiate a forced entry on [her] in [her] cell at 5:00 a.m." (*Id.*) It appears Plaintiff seeks to hold Defendants Alire and Tel

8

responsible under a theory of supervisory liability. Section 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation. *Jenkins v. Wood*, 81 F.3d 988, 994–95 (10th Cir. 1996). Yet in situations where an " 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise," the supervisor may be personally liable. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Plaintiff has failed to allege facts sufficient to show an affirmative link between any of the alleged constitutional violations and Defendant Alire's personal participation, exercise of control or direction, or his failure to supervise. As to Defendant Tel, though Plaintiff alleges he "would have been the officer who gave the official order to *initiate* a forced entry" into her cell, Plaintiff does not allege that Defendant Tel was involved in any action beyond the order for the officers to *enter* her cell; nor does Plaintiff allege that Defendant Tel exercised control or direction over the alleged excessive force or that Defendant Tel failed to supervise the officers who allegedly used excessive force. Moreover, as Defendants point out, the alleged possibility of an order to initiate a forced entry into the cell is not, in itself, a constitutional violation.

Plaintiff alleges another offender asked Defendant Goodlow what happened that night, and Defendant Goodlow "said that it was all wrong and it was bad. He said once the night staff who initiated the forced entry saw [Plaintiff] was well it was beyond what should have been considered policy."[2] (Compl. at 6.) Plaintiff alleges the same offender asked Officer Cordova

---

[2] To the extent Plaintiff alleges a violation of prison administrative regulations, "failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)).

what happened that night, and "[s]he welled up with emotion when she spoke of it. She said she tried to stay with [Plaintiff] but her superiors made her leave [Plaintiff]." (*Id.*) Again, Plaintiff fails to allege that either Defendant Goodlow or Cordova were actual participants in any of the alleged constitutional violations. At most, Plaintiff alleges Defendants Goodlow and Cordova were unhappy with the events that occurred that night.

Finally, Plaintiff alleges "Defendant Copeland was one of the female Officers on duty that night. The majority of the physical contact came from her." (Compl. at 2.) This allegation comes closer to alleging the participation of Defendant Copeland. Nevertheless, the court agrees with the defendants that Plaintiff has failed to allege "which of the described excessive-force contacts [Plaintiff] ascribes to her." (Mort. at 8.) Thus, because Plaintiff has failed to allege "what each defendant did to [her]," *Nasious*, 492 F.3d at 1163, she has failed to allege Defendant Copeland's personal participation.

### 2. *First Amendment Retaliation and Fourteenth Amendment Equal Protection Claims*

Defendants do not move to dismiss Plaintiff's retaliation or equal protection[3] claims on the basis that Plaintiff has failed to allege their personal participation in the alleged constitutional violations. Nevertheless, because the plaintiff is proceeding *in forma pauperis*, the court may address this issue *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that the court shall dismiss the case at any time if it determines that the action fails to state a claim on which relief may be granted. *Id.*

Plaintiff alleges she was dragged out of her cell in retaliation for filing grievances and to "teach [her] a lesson." (Compl. at 5.) Plaintiff states prior to that night she had filed numerous

---

[3] The Equal Protection Clause of the Fourteenth Amendment protects inmates from invidious discrimination. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

10

grievances against Unit Six staff. (*Id.* at 8.) Plaintiff also alleges since her arrival at DWCF, she has "been the target of racially motivated attacks" because she is a Muslim from Libya. (Compl. at 5, 9.) However, Plaintiff has not identified any specific defendant who she believes retaliated against her or who racially targeted or discriminated against her. Moreover, to the extent Plaintiff relies on the allegations in her Eighth Amendment claim to support an inference that the same defendants retaliated or discriminated against her, the claims fail for the reasons her Eighth Amendment claim fails, as set forth *supra*.

As Plaintiff has failed to allege an affirmative link between the alleged constitutional violations and the defendants' participation, *Serna*, 455 F.3d at 1151–52, her retaliation and equal protection claims are dismissed.

**C.     *Qualified Immunity***

Qualified immunity is an affirmative defense against 42 U.S.C. § 1983 damage claims available to public officials sued in their individual capacities. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine protects officials from civil liability for conduct that does not violate clearly established rights of which a reasonable person would have known. *Id.* As government officials at the time the alleged wrongful acts occurred, being sued in their individual capacities, the defendants are entitled to invoke a qualified immunity defense to Plaintiff's claims. *See id.* at 231; *Johnson v. Jones*, 515 U.S. 304, 307 (1995) (noting that police officers were "government officials entitled to assert a qualified immunity defense"). In resolving a motion to dismiss based on qualified immunity, a court looks at: "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v.*

*City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232) (internal quotations omitted). Once a defendant invokes qualified immunity, the burden to prove both parts of this test rests with the plaintiff, and the court must grant the defendant qualified immunity if the plaintiff fails to satisfy either part. *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010). Where no constitutional right has been violated "no further inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

The court has determined that Plaintiff has failed to state any constitutional claim. As such, the defendants are entitled to qualified immunity.

### D. *Leave to Amend*

Dismissal of a case under Rule. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). As such, in this jurisdiction, a court typically does not dismiss a claim under Rule 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109–10. The court may only dismiss "*sua sponte* 'when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [her] to amend [her] complaint would be futile.' " *Id.* (quoting *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991)). Here, Plaintiff has not yet been provided notice and an opportunity to amend her complaint to cure the deficiencies. Because it is possible Plaintiff may

12

cure the pleading deficiencies for her constitutional claims, the court will allow Plaintiff to file an amended complaint within thirty days of this Order.

However, Plaintiff is advised, because counsel has not entered an appearance to represent her, that she is obligated, as a party in this case representing herself, to meet all obligations and deadlines imposed under the law and the rules of procedure, local rules, and the practice of standards of this Court.

Plaintiff is further advised that if she does not file an amended complaint within thirty days of this Order, this case will be closed and judgment will enter.

**WHEREFORE**, for the foregoing reasons, it is

**ORDERED** that the "Defendants' Motion to Dismiss" (Doc. No. 19) is **GRANTED** as follows:

1. Plaintiff's official-capacity claims for monetary relief against all of the defendants are dismissed without prejudice for lack of subject matter jurisdiction as barred by the Eleventh Amendment; and

2. Plaintiff's constitutional claims asserted against all of the defendants are dismissed with prejudice for failure to state a claim upon which relief can be granted;

3. The defendants are granted qualified immunity. It is further

**ORDERED** that Plaintiff is granted leave to file an amended complaint within thirty (30) days of this Order.

Dated this 21st day of April, 2017.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge